**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| NICOLE A. SHERROD, Individually and on behalf of a Class of Similarly Situated Consumers, | ) ) ) ) |
| Plaintiff, | ) CASE NO. 2:13-cv-00036-JLG-TPK |
| v. | ) (Judge James L. Graham) |
| ENIGMA SOFTWARE GROUP USA, LLC, | ) (Magistrate Judge Terence P. Kemp) |
| Defendant. | ) ) |

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ENIGMA SOFTWARE GROUP USA, LLC WITH MEMORANDUM IN SUPPORT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Enigma Software Group USA, LLC ("Enigma") hereby moves the Court to enter summary judgment in its favor on all claims in the Class Action Complaint ("Complaint") that plaintiff Nicole A. Sherrod ("plaintiff") has brought against Enigma in this action.

Plaintiff asserts that Enigma charged her credit card, without authorization, for the renewal of a software subscription which she had obtained from Enigma. Her allegations, however, are disproved by Enigma's business records. Those records unequivocally demonstrate that plaintiff purchased *two* software subscriptions from Enigma at *two* separate times for *two* different computers using *two* different credit cards, but only cancelled one of those subscriptions and allowed the other to renew under the terms of the applicable license agreement. The records demonstrate that Enigma's subscription management vendor honored plaintiff's request to cancel the one subscription, and neither renewed that subscription nor charged plaintiff for a renewal of that subscription. Enigma's subscription management vendor only renewed the

1

-

subscription for which plaintiff did not request cancellation, and only charged plaintiff for that renewal, again in accordance with the terms of the license agreement. Indeed, the record evidence reflects that Enigma and its subscription management vendor (1) acted in complete compliance with the applicable license agreement governing the purchase and use of plaintiff's software subscriptions, and (2) made no representations to plaintiff that did not accurately reflect the relationship between the parties.

In sum, plaintiff received the goods and services for which she paid and cannot maintain a cause of action against Enigma based on her own confusion of the number of subscriptions that she purchased. Accordingly, and for the reasons set forth in the memorandum of points and authorities and declarations filed contemporaneously herewith, there is no dispute of material fact, and the Court should grant this motion and enter judgment in Enigma's favor as to each of plaintiff's claims in the Complaint.

WHEREFORE, defendant Enigma Software Group USA, LLC respectfully requests that the Court (1) grant this motion; (2) enters summary judgment in favor of Enigma and against plaintiff as to each of the claims in the Complaint; and (3) grant all other relief it deems just and necessary.

Respectfullysubmitted,

ENIGMASOFTWAREGROUPUSA,LLC,

Byitsattorneys,

s/MarkA.VanderLaan

MarkA.VanderLaan(OhioBarNumber0013297)
TrialAttorney
DINSMORE&SHOHLLLP
255EastFifthStreet,Suite1900
Cincinnati,OH45202
(513)977-8238
mark.vanderlaan@dinsmore.com

*Prohacvice:*
R.BruceAllensworth
    bruce.allensworth@klgates.com
AndrewC.Glass
    andrew.glass@klgates.com
RogerL.Smerage
    roger.smerage@klgates.com
K&LGATESLLP
StateStreetFinancialCenter
OneLincolnStreet
Boston,MA02111
Tel.:(617)261-3100
Fax:(617)261-3175

3

**MEMORANDUM**

Defendant Enigma Software Group USA, LLC ("Enigma") submits the following memorandum of points and authorities in support of its Motion for Summary Judgment.

1.      Introduction

Plaintiff Nicole A. Sherrod ("plaintiff") asserts that Enigma charged her credit card, without authorization, for the renewal of a software subscription which she had obtained from Enigma. Her allegations, however, are disproved by Enigma's business records. Those records unequivocally demonstrate that plaintiff purchased *two* software subscriptions from Enigma at *two* separate times for *two* different computers using *two* different credit cards, but only cancelled one of those subscriptions and allowed the other to renew under the terms of the applicable license agreement. The records demonstrate that Enigma's subscription management vendor honored plaintiff's request to cancel the one subscription, and neither renewed that subscription nor charged plaintiff for a renewal of that subscription. Enigma's subscription management vendor only renewed the subscription for which plaintiff did not request cancellation, and only charged plaintiff for that renewal, again in accordance with the terms of the license agreement. Indeed, the record evidence reflects that Enigma and its subscription management vendor (1) acted in complete compliance with the applicable license agreement governing the purchase and use of plaintiff's software subscriptions, and (2) made no representations to plaintiff that did not accurately reflect the relationship between the parties.

In sum, plaintiff received the goods and services for which she paid and cannot maintain a cause of action against Enigma based on her own confusion of the number of subscriptions that she purchased. Accordingly, and for the reasons set forth below, there is no dispute of material

fact, and the Court should grant Enigma's Motion an d enter judgment in its favor as to each of plaintiff's claims in the Complaint.

    2.    Undisputed Facts

      (a)    Purchasing Enigma Software Subscriptions

Enigma produces a computer software program called SpyHunter, which detects and removes viruses and malware from personal computers. *See* Declaration of Alessandro Malaspina ("Malaspina Decl.") at ¶ 4. Enigma also produces a computer software program called RegHunter, which cleans personal computer registries. *See id.* at ¶ 5. When a customer purchases the SpyHunter program from Enigma through its website, the customer can choose to bundle that purchase with a purchase of the RegHunter program. *See id.* at ¶ 6 & Ex. B.

When a customer purchases and installs the SpyHunter program, separately or in a bundle with the RegHunter program, the customer agrees to the terms of the SpyHunter End User License Agreement ("SpyHunter EULA"). *See* Malaspina Decl. at ¶ 7 & Ex. A. The SpyHunter EULA provides that the customer "may install and use the Software on your compatible computer, up to the Permitted Number of computers." *See* Malaspina Decl., Ex. A at p. 2. Unless a customer has a specially negotiated license, the EULA sets the Permitted Number at one computer. *See id.* The SpyHunter EULA also provides, under a heading reading "4. RENEWALS," that "[w]hen you purchase SpyHunter, your account will be configured for six month semi-annual automatic billing." *Id.* at p. 4 (capitalization in original). Under the same heading, the SpyHunter EULA provides for cancellation of the automatic renewal:

> If you choose to cancel the automatic billing option, you can accomplish this by either: (a) opening a ticket with technical support (on the following URL: http://www.enigmasoftware.com/support/) and request to opt-out of the automatic billing option, (b) contact our payment processor Esellerate.net at 1-800-999-2734 (for international callers 1-719-576-0123), (c) or email Esellerate.net at

shopper@esellerate.net. If you cancel automatic billing, we will not bill you for continued service when your account expires.

*Id.*[1] Finally, the Renewals provision of the SpyHunter EULA informs customers that "[i]f you remain on automatic billing, your account will automatically renew at the end of your subscription and your credit card will be billed accordingly." *Id.* The SpyHunter EULA provides that it is governed by the laws of the State of New York. *See id.* at p.7.

The SpyHunter EULA is available through a link on the "SpyHunter–Purchase" webpage, which link is styled "End User License Agreement" and is located above the "Proceed>>" button that a customer must click to complete the purchase. *See* Malaspina Decl. at ¶7 & Ex. B. Immediately above the "Proceed>>" button that a customer must click to complete their purchase, the SpyHunter–Purchase webpage notifies the customer that their subscription to SpyHunter, and any additionally bundled programs the customer elects to purchase in the same transaction, will automatically renew after six months and every six months thereafter. *See id.* at ¶8 & Ex. B. The SpyHunter–Purchase webpage also notifies the customer that they will receive an e-mail allowing them to opt out of the automatic renewal process. *See id.*

Enigma uses a third-party vendor, DigitalRiver, Inc. ("DigitalRiver"), to perform the customer billing and account renewal and cancellation functions in connection with customer purchases of software subscriptions from Enigma. *See* Malaspina Decl. at ¶19; *see also* Declaration of Thomas Beidle ("Beidle Decl.") at ¶3. Among the functions that it provides to Enigma, DigitalRiver notifies customers of upcoming subscription renewals, processes customer

---

[1] As set forth in the SpyHunter EULA, Esellerate.net is a wholly owned subsidiary of DigitalRiver, Inc. *See* Malaspina Decl., Ex. A at p.1.

payments for subscription purchases and renewals, and processes customer subscription cancellations. *See* Malaspina Decl. at ¶19; Beidle Decl. at ¶3.

      (b)     Plaintiff Purchased Two Separate Software Subscriptions At Two Separate Times For Two Different Computers Using Two Different Credit Cards

On April 10, 2012, from a computer using an IP Address ending in the digits 160, plaintiff ordered a six-month subscription of Enigma's SpyHunter and RegHunter software programs (the "First Subscription"). *See* Malaspina Decl. at ¶9; Beidle Decl. at ¶4. Plaintiff used a MasterCard credit card–ending in the digits 6817–to pay the $69.98 price of the First Subscription. *See* Beidle Decl. at ¶6 & Ex. A. As set forth above, (a) the SpyHunter EULA was available to plaintiff through a link on the SpyHunter–Purchase webpage, which link is styled "End User License Agreement" and is located above the "Proceed>>" button which plaintiff had click to complete the purchase of the First Subscription, (b) the SpyHunter–Purchase webpage notified plaintiff that her First Subscription would automatically renew after six months and every six months thereafter, and (c) the SpyHunter–Purchase webpage also notified plaintiff that she would receive an e-mail allowing her to opt out of the automatic renewal process for her First Subscription. *See* Malaspina Decl. at ¶10 & Ex. B. Plaintiff received an invoice for the First Subscription with the order number for the subscription. *See* Beidle Decl. at ¶6 & Ex. A. On the same day as placing the April 10, 2012 order, plaintiff installed the SpyHunter software on the computer from which she had placed the order, activated the software, and ran the software to scan the computer. *See* Malaspina Decl. at ¶11 & Ex. C. By installing the SpyHunter software, plaintiff agreed that the SpyHunter EULA would govern her First Subscription. *See id.* at ¶12 & Ex. A.

On April 15, 2012, from a *different* computer using the same IP Address ending in the digits 160, plaintiff ordered a *second* six-month subscription of Enigma's SpyHunter and

RegHunter software programs (the "Second Subscription").[2] *See* Malaspina Decl. at ¶13; Beidle Decl. at ¶7. Plaintiff used a *different* MasterCard credit card – ending in the digits 5709 – to pay the $69.98 price of the Second Subscription. *See* Beidle Decl. at ¶9 & Ex. B. As set forth above, (a) the SpyHunter EULA was available to plaintiff through a link on the SpyHunter–Purchase webpage, which link is styled "End User License Agreement" and is located above the "Proceed>>" button which plaintiff had click to complete the purchase of the Second Subscription, (b) the SpyHunter–Purchase webpage notified plaintiff that her Second Subscription would automatically renew after six months and every six months thereafter, and (c) the SpyHunter–Purchase webpage also notified plaintiff that she would receive an e-mail allowing her to opt out of the automatic renewal process for her Second Subscription. *See* Malaspina Decl. at ¶14 & Ex. B. Plaintiff received an invoice for the Second Subscription with the order number for the subscription. *See* Beidle Decl. at ¶9 & Ex. B. On the same day as placing the April 15, 2012 order, plaintiff installed the SpyHunter software on the second computer from which she had placed the order, activated the software, and ran the software to scan the second computer. *See* Malaspina Decl. at ¶15 & Ex. C. By installing the SpyHunter software, plaintiff agreed that the SpyHunter EULA would govern her Second Subscription. *See id.* at ¶16 & Ex. A.

DigitalRiver provided the customer billing and account renewal or cancellation functions to Enigma in connection with plaintiff's First Subscription and Second Subscription. *See* Beidle Decl. at ¶10. Enigma never directly charged any credit card belonging to plaintiff. *See*

---

[2] Enigma generates a unique Hardware ID with respect to every computer on which its software, including SpyHunter, is installed. *See* Malaspina Decl. at ¶17. The Hardware ID associated with the First Subscription is different from the Hardware ID associated with the Second Subscription. *See id.* at ¶18 & Ex. D. This reflects that Plaintiff made two different purchases of the SpyHunter software and installed those purchases onto two different computers. *See id.* at ¶18. Plaintiff had no specially negotiated license from Enigma, *see id.* at ¶24, and thus, could only install each software package on a single computer, *see* Malaspina Decl., Ex. A at p.2.

Malaspina Decl. at ¶ 20. Rather, Digital River made and processed any such charges on Enigma's behalf.  *See id.* There were no communications – by telephone, by e-mail, through SpyHunter's Spyware Helpdesk, or through Enigma's webpage – between Enigma and plaintiff. *See id.* at ¶ 23.

> (c) Plaintiff Renewed Her First Subscription; Plaintiff Cancelled Her Second Subscription

On October 3, 2012, Digital River provided plaintiff notification that the First Subscription would automatically renew in seven days. *See* Beidle Decl. at ¶ 11. Digital River sent plaintiff the October 3, 2012 notification at her e-mail address nicoleasherrod@yahoo.com, the e-mail address plaintiff provided when she ordered the First Subscription. *See id.* at ¶ 11 & Ex. D. The October 3, 2013 notification contained the order number for the First Subscription. *See id.* at ¶ 11 & Ex. C. The October 3, 2012 notification informed plaintiff that the renewal of the First Subscription, which plaintiff had purchased on April 10, 2012, would occur on October 10, 2012, if she took no action. *See id.* at ¶ 12 & Ex. C. The October 3, 2012 notification provided plaintiff a link to reach Digital River Online Support and informed her that to cancel the First Subscription, she could click that link. *See id.* at ¶ 13 & Ex. C. After doing so, and upon entering her e-mail address and the First Subscription order number, plaintiff could then click the "Cancel" links for the software programs in the First Subscription. *See id.* at ¶ 13 & Ex. E.

Plaintiff took no action in connection with the October 3, 2012 notification. *See* Beidle Decl. at ¶ 14. Indeed, plaintiff took no action to cancel her First Subscription prior to its renewal on October 10, 2012. *See id.* On October 10, 2012, pursuant to the EULA, Digital River renewed plaintiff's First Subscription through April 10, 2013, and charged her MasterCard credit

card ending in the digits 6817 for the $69.98 price of the six-month renewal. [3] *See id.* at ¶ 15 & Ex. F; *see also* Malaspina Decl., Ex. D.

On October 8, 2012, Digital River provided plaintiff notification that the Second Subscription would automatically renew in seven days. *See* Beidle Decl. at ¶ 16. Digital River sent plaintiff the October 8, 2012 notification at her e-mail address nicoleasherrod@yahoo.com, the e-mail address plaintiff provided when she ordered the Second Subscription. *See id.* at ¶ 16 & Ex. G. The October 8, 2012 notification contained the order number for the Second Subscription. *See id.* at ¶ 16 & Ex. C. The October 8, 2012 notification informed plaintiff that the renewal of the Second Subscription, which plaintiff had purchased on April 15, 2012, would occur on October 15, 2012, if she took no action. *See id.* at ¶ 17 & Ex. C. The October 8, 2012 notification provided plaintiff a link to reach Digital River Online Support and informed her that to cancel the Second Subscription, she could click that link. *See id.* at ¶ 18 & Ex. C. After doing so, and upon entering her e-mail address and the Second Subscription order number, plaintiff could then click the "Cancel" links for the software programs in the Second Subscription. *See id.* at ¶ 18 & Ex. E.

After receiving the October 8, 2012 notification, plaintiff clicked the link to access Digital River Online Support. *See* Beidle Decl. at ¶ 19. After doing so, and upon entering her e-mail address and the Second Subscription order number, plaintiff clicked the "Cancel" link for the SpyHunter and RegHunter programs in the Second Subscription. *See id.* On October 15, 2012, Digital River processed the cancellation of the Second Subscription and did not renew the Second Subscription or charge plaintiff's MasterCard ending in the digits 5709 (or any other

---

[3] After plaintiff filed suit, Enigma requested that Digital River cancel the automatic renewal of plaintiff's First Subscription prior to its next renewal, and Digital River, having done so, sent plaintiff notice of the cancellation. *See* Malaspina Decl. at ¶ 21; Beidle Decl. at ¶ 21 & Ex. D, F, & I.

creditcard)foranyrenewaloftheSecondSubscrip        tion. *See id.*at¶19&Ex.H.OnOctober

15,2012,DigitalRiversentplaintiffnotification        ofthecancellationoftheSecondSubscription

athere-mailaddressnicoleasherrod@yahoo.com,the        e-mailaddressthatplaintiffprovidedwhen

sheorderedtheSecondSubscription.        *See id.*at¶20,Ex.G,&Ex.I.

3.        StandardofReview

Acourtshallgrantsummaryjudgmentif"thereisn        ogenuinedisputeastoanymaterial

factandthemovingpartyisentitledtoajudgment        asamatteroflaw."Fed.R.Civ.P.56(a).

Themovingpartybears"theinitialresponsibility        ofinformingtheCourtofthebasisforits

motion,andidentifyingthoseportionsof[thereco        rdevidence]whichitbelievesdemonstratethe

absenceofagenuineissueofmaterialfact."        *CelotexCorp.v.Catrett*,477U.S.317,322(1986);

*Tannerv.Calpin&Drysdale*,24F.3d874,878(6thCir.1994)(movingpartysa        tisfiessummary

judgmentburden"byproducingevidenceshowingthe        absenceofagenuineissueofmaterialfact

orbyshowingthatthereisanabsenceofevidence        tosupportthenonmovingparty'scase").The

non-movingpartymustthen"comeforwardwith'spec        ificfactsshowingthatthereisagenuine

issuefortrial.'"        *MatsushitaElec.Indus.Co.,Ltd.v.ZenithRadioC        orp.*,475U.S.574,586-87

(1986); *Firestonev.Galbreath*,895F.Supp.917,920(S.D.Ohio1995)(summaryj        udgmentis

properwhere"nonmovingpartylacksevidencetosup        portanessentialelementof"herclaims).

Ifthenon-movingparty"failstomakeashowingsu        fficienttoestablishtheexistenceof

anelementessentialtothatparty'scase…onwhic        hthatpartywillbeartheburdenofproofat

trial,"thenRule56"mandatestheentryofsummary        judgment." *Celotex*,477U.S.at322; *see

Sparksv.GoodyearAtomicCorp.*,773F.Supp.1043,1045-46(S.D.Ohio1991)("to        securethe

just,speedyandinexpensivedeterminationofevery        action,"summaryjudgmentfordefendant

mustenterwhereevidencedemonstratesthatdefenda        nt"isentitledtojudgmentasamatterof

-

law"). In responding to a motion for summary judgment by the defendant, the plaintiff cannot rely on the "mere existence of a scintilla of evidence in support of" her claims, but rather must produce "evidence upon which a jury could reasonably find for the plaintiff." *See Sparks*, 773 F. Supp. at 1046; *Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 748-49 (S.D. Ohio 2009) ("nonmoving party must present 'significant probative evidence'" in response to motion for summary judgment); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993) (district scourts have no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

4.    Argument

   (a)    Plaintiff's Contract-Based Claims Fail Because Plaintiff Received The Products For Which She Bargained

Enigma's business records regarding plaintiff's subscriptions establish that plaintiff cannot provide the necessary evidence to support her contract-based claims and thus that judgment should enter for Enigma on those claims.

      (i)    Plaintiff Cannot Demonstrate That Enigma Breached Its Contract with Plaintiff

It is undisputed that plaintiff's relationship with Enigma – including her purchase and use of both software subscriptions – is governed by the EULA. Indeed, in the Complaint, plaintiff admits that she is bound by the EULA. *See* Compl. at ¶ 29. The EULA provides that it "will be governed by and construed in accordance with the substantive laws in force in the State of New York." *See* Malaspina Decl., Ex. A at p. 7. Accordingly, plaintiff's breach of contract claim is governed by New York contract law, rather than that of Ohio. *See Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (noting Ohio law's strong adherence to contractual choice-of-law provisions).

To establish a breach of contract, a plaintiff must prove her own performance of the contract, the defendant's failure to perform, and resulting damages. *See Brualdi v. IBERIA*, 913 N.Y.S.2d 753, 754 (N.Y. App. Div. 2010). Where the record evidence demonstrates that the defendant fulfilled its obligations under the contract, the defendant is entitled to judgment on a breach of contract claim as a matter of law. *See Katz v. Bd. of Managers*, 921 N.Y.S.2d 228, 229 (N.Y. App. Div. 2011) (granting summary judgment for defendant, where defendant fulfilled its obligations under contract); *Marks v. Smith*, 885 N.Y.S.2d 463, 465-66 (N.Y. App. Div. 2009) (same).[4]

Here, the record evidence demonstrates that Enigma and its vendor Digital River managed plaintiff's account in accordance with the EULA. Plaintiff purchased two subscriptions from Enigma, and as part of each purchase, she agreed that (1) each subscription would automatically renew after six months, and (2) the credit card she provided at the time of purchase would be charged for the renewal, unless plaintiff cancelled each subscription. *See* Malaspina Decl. at ¶¶ 9-16 & Exs. A, B, D. Plaintiff requested the cancellation of her Second Subscription prior to its renewal, and Digital River's business records establish that it cancelled the Second Subscription and did not charge plaintiff for a renewal of that subscription. *See* Beidle Decl. at ¶¶ 19-20 & Exs. G, H; *see also* Malaspina Decl., Ex. D. Plaintiff did not request cancellation of her First Subscription despite notice of its forthcoming renewal, and under the terms of the EULA, Digital River, on behalf of Enigma, was permitted to charge plaintiff for the renewal of the First Subscription. *See* Beidle Decl. at ¶¶ 11-14 & Exs. C, D, & F; *see also* Malaspina Decl., Ex. A at p. 4. Thus, plaintiff cannot establish either that Enigma or Digital River, acting on

---

[4] The law of Ohio requires a plaintiff pursuing a breach of contract claim to make the same showing, such that the outcome here would be the same even were the Court to apply Ohio law, rather than New York law, to plaintiff's breach of contract claim. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 564-65 (6th Cir. 2006) (summary judgment is warranted where evidence demonstrates that defendant's conduct comported with contract).

Enigma's behalf, "fail[ed] to cancel Plaintiff's subscription upon request," or that Enigma or DigitalRiver, acting on Enigma's behalf, "charg[ed] Plaintiff's credit card a renewal fee without prior authorization and after Plaintiff canceled her subscription."  *See* Compl. at ¶ 31. Because plaintiff cannot establish Enigma failed to perform under the EULA, summary judgment should enter in Enigma's favor on plaintiff's breach of contract claim.  *See Katz*, 921 N.Y.S.2d at 299; *Marks*, 885 N.Y.S.2d at 465-66.

(ii)     Plaintiff Cannot Establish That the Doctrine Of Promissory Estoppel Applies To This Matter

Under Ohio law, to establish a claim of promissory estoppel, a plaintiff "must demonstrate … (1) … a promise clear and unambiguous in its terms; (2) … reliance by the party to whom the promise is made; (3) the reliance [was] reasonable and foreseeable; and (4) the party claiming estoppel [was] injured by the reliance."  *Juergens v. Strang, Klubnik & Assoc., Inc.*, 96 Ohio App.3d 223, 231, 644 N.E.2d 1066 (8th Dist. 1994). The existence of a written, integrated contract between the parties bars a claim for promissory estoppel as to the subjects the contract covers.  *See Mann v. St. Felicitas Elementary Sch.*, 161 Ohio App.3d 715, 2005-Ohio-3132, 831 N.E.2d 1071, ¶¶ 31-32 (8th Dist.);     *Kashif v. Cent. State Univ.*, 133 Ohio App.3d 678, 683-84, 729 N.E.2d 787 (10th Dist. 1999).

Plaintiff's purchases of her First Subscription and her Second Subscription are each governed by the EULA,     *see* Malaspina Decl. at ¶¶ 12, 16, and plaintiff has admitted the same, *see* Compl. at ¶ 29. The EULA provides, in part, that " [t]he EULA in effect at the time you downloaded the software will govern your use of it.    " *See* Malaspina Decl., Ex. A at p.1. And the EULA specifically covers the subscription renewal process.  *See id.* at p.4. Moreover, the EULA contains an integration clause.     *See id.* at p.8 ("This is the entire agreement between [Enigma] and you relating to the Software and it supersedes any prior representations,

11

-

discussions, undertakings, communications or advertising relating to the Software."). Because plaintiff's claim regarding the renewal of her subscriptions is governed by the EULA, and because the EULA is a written, integrated contract, plaintiff is barred from maintaining a promissory estoppel cause of action, and summary judgment for Enigma is warranted on that basis alone. *See Manno*, 161 Ohio App.3d 715, 2005-Ohio-3132, 831 N.E.2d 1071, at ¶¶ 31-32; *Kashif*, 133 Ohio App.3d at 683-84, 729 N.E.2d 787; *see also Kena Props., L.L.C. v. Merchs. Bank & Trust*, No. 1:04-CV-672, 2006 WL 1071874, at *4 (S.D. Ohio Apr. 24, 2006) (granting summary judgment; written contract barred promissory estoppel claim).

Further, plaintiff cannot establish that she was injured as a result of reasonable reliance on any promise from Enigma. Plaintiff alleges that she relied "upon representations made by Enigma that it cancelled and would not automatically renew her software subscription." Compl. at ¶ 34. Yet, Enigma made no such representations; in fact, Enigma had no direct communication with plaintiff whatsoever. *See* Malaspina Decl. at ¶ 23. Nor did Digital River, acting on Enigma's behalf, make any representation to plaintiff prior to her filing suit that it had cancelled and would not automatically renew the First Subscription.[5] *See* Beidle Decl. at ¶¶ 11-15. With respect to the Second Subscription, Digital River, acting on Enigma's behalf, processed plaintiff's request to cancel and to not automatically renew the Second Subscription, *see id.* at ¶¶ 16-19, such that its representation to plaintiff that it had done so, *see id.* at ¶ 20, was accurate. Accordingly, plaintiff was not injured as a result of reliance upon any promise and cannot maintain a claim for promissory estoppel against Enigma. Judgment should enter for Enigma on that claim.

---

[5] *See*, *supra*, note 3 .

(b)     Plaintiff's Misrepresentation Claims Fail Because Plaintiff Cannot
Establish The Existence Of Any Misrepresentation

Plaintiff cannot provide evidence demonstrating the requisite elements of her misrepresentation-based claims, whether they sound in fraud or negligence, and thus, summary judgment on those claims is appropriate. *See Barnhart*, 12 F.3d at 1389; *Firestone*, 895 F.Supp. at 920.

(i)     Because A Written Contract Governs the Subject Transactions,
Plaintiff's Misrepresentation-Based Tort Claims Are Barred

Where a contract governs the relationship between two parties, the existence of the contract bars the parties from bringing tort-based causes of action against each other for claims arising out of the contract. *See Nichols v. Chi. Title Ins. Co.*, 107 Ohio App.3d 684, 696-97, 669 N.E.2d 323 (8th Dist. 1995) ("a cause of action [sounding in contract] cannot be classified as a tort action simply because the [plaintiff] used the term 'fraudulently' in her pleading"); *see also Pappas v. Ippolito*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, ¶ 44 (granting summary judgment for defendant on plaintiff's fraud claim where contract between parties governed claim at issue). "Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." *Nichols*, 107 Ohio App.3d at 696-97, 669 N.E.2d 323; *see Pavlovich*, 435 F.3d at 569-70 ("Ohio law prevents the recovery of purely economic losses…where recovery of such damages is not based upon a tort duty independent of contractually created duties"). Here, plaintiff cannot maintain any claims for fraud or misrepresentation in connection with the cancellation of automatic subscription renewals because the EULA sets forth the parties' obligations in connection with the cancellation of those renewals. *See* Malaspina Decl., Ex. A at p. 4.

13

-

Further, according to the Complaint, plaintiff's alleged damages are solely economic in nature–namely, the purported charge for an alleged unauthorized renewal. *See* Compl. ¶¶14, 32, 37, 43, 47. Even if plaintiff could demonstrate an unauthorized charge–which Enigma's and Digital River's records establish she cannot– plaintiff could not put forth any evidence of non-economic damages. Accordingly, the economic loss doctrine precludes plaintiff's tort-based misrepresentation claims as a matter of law. *See 425 Beecher, L.L.C. v. Unizan Bank, Nat'l Ass'n*, 186 Ohio App.3d 214, 2010-Ohio-412, 927 N.E.2d 6, ¶¶47-51 (10th Dist.).

Because plaintiff's misrepresentation-based tort claims, whether sounding in fraud or negligence, fail as a matter of law, judgment should enter for Enigma on those claims.

> (ii)    Plaintiff Cannot Demonstrate That Enigma Made Any False Representations To Her

Plaintiff cannot sustain her misrepresentation-based claims because she cannot demonstrate that Enigma made any false representation to her. [6] Plaintiff styles her third cause of action "Count Three: Fraud" and her fourth cause of action "Count Four: Misrepresentation." To the extent plaintiff alleges that Enigma made fraudulent or intentional misrepresentations "concerning the cancellation, renewal and renewal charge for the software subscription she purchased," *see* Compl. ¶¶39, 45, these causes of action overlap.  *See Hibbett v. City of Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist. 1982) (essential element to a claim for fraud is the alleged misrepresentation).  To the extent plaintiff bases her fourth cause of action on Enigma's alleged "fail[ure] to exercise reasonable care or competence in obtaining and communicating information to Plaintiff concerning" her cancellation of the Second Subscription

---

[6]      In addition, plaintiff's allegations of fraud do not comport with the pleading requirements of the Federal Rules of Civil Procedure because they do not "state with particularity the circumstances" giving rise to the alleged fraud. Fed.R.Civ.P.9(b).

and renewal of the First Subscription, Enigma reads such an allegation, for the sake of argument only, as asserting a claim of negligent misrepresentation.

Regardless of whether plaintiff asserts her claims under a theory of fraud or negligence, plaintiff must prove a false representation to sustain either claim. *See Pappas*, 177 Ohio App.3d 625, 2008-Ohio-3976, 895 N.E.2d 610, at ¶ 40 ("[a] claim of common-law fraud requires proof of … a representation … made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred"); *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989) (negligent misrepresentation requires showing that defendant "supplie[d] false information"). Where a plaintiff cannot demonstrate the falsity of the alleged misrepresentation, her claim for misrepresentation fails as a matter of law. *See Kelley v. Ruf*, 181 Ohio App.3d 534, 2009-Ohio-1215, 909 N.E.2d 714, ¶¶ 9-12 (9th Dist.); *Manno*, 161 Ohio App.3d 715, 2005-Ohio-3132, 831 N.E.2d 1071, at ¶¶ 34-35; *Shaw v. J. Pollock & Co.*, 82 Ohio App.3d 656, 662, 612 N.E.2d 1295 (9th Dist. 1992).

Here, Enigma's and Digital River's records establish that neither Enigma nor Digital River, acting on Enigma's behalf, ever made any false representation to plaintiff. Enigma and Digital River never represented to plaintiff, prior to her filing suit, that they had cancelled her First Subscription as plaintiff had not requested cancellation of the First Subscription, and Enigma and Digital River never represented to plaintiff that they would not charge her for renewal of the First Subscription. [7] *See* Malaspina Decl., Ex. D; Beidle Decl., Exs. D, F, G, & H; *see also* Beidle Decl. at ¶¶ 11-15. Rather, plaintiff frequested that Digital River, on Enigma's

---

[7]    *See*, *supra*, note 3.

behalf, cancel her Second Subscription, which Digital River *did* cancel and *did not* renew.[8] *See* Beidle Decl. at ¶¶16-20 & Exs. G-I. Moreover, Enigma's records reflect no communications between it and plaintiff, either by telephone, by e-mail, through SpyHunter's Spyware Helpdesk, or through Enigma's web page. *See* Malaspina Decl. ¶23. Because there is no evidence that Enigma or Digital River, acting on Enigma's behalf, made any false representation to plaintiff, the Court should enter judgment in favor of Enigma on plaintiff's misrepresentation-based claims whether they sound in fraud or negligence.

> (iii) Plaintiff Cannot Demonstrate Any Injury Because She Received Everything For Which She Paid

Enigma's and Digital River's records of plaintiff's transactions demonstrate that neither Enigma nor Digital River, acting on Enigma's behalf, ever charged plaintiff for any software which she had not agreed to purchase. Digital River made three charges to plaintiff's credit cards, namely: (1) the charge for plaintiff's original purchase of her First Subscription; (2) the charge for plaintiff's original purchase of her Second Subscription; and (3) the charge for the six-month renewal of the First Subscription, which subscription plaintiff had not cancelled. *See* Beidle Decl., Exs. A, B; Malaspina Decl., Ex. D. Plaintiff authorized each of these three charges during the purchase process and pursuant the terms of the EULA. *See* Beidle Decl., Exs. A, B; Malaspina Decl., Ex. A at p.4; *see also* Malaspina Decl. at ¶¶7-8,10,14 & Ex. B. Neither Enigma's nor Digital River's records reflect any other charges, let alone any unauthorized charges, to either of plaintiff's credit cards, *see* Malaspina Decl. at ¶20 & Ex. D; Beidle Decl. at ¶¶19, 21, and plaintiff cannot provide any evidence of any unauthorized charges. Because plaintiff cannot establish any injury, her misrepresentation-based claims fail. *See Delman*, 41

---

[8] In addition, there is no evidence that Enigma owed any duty to plaintiff beyond its duty under the EULA, which duty Enigma fully discharged.

OhioSt.3dat4,534N.E.2d835; *Pappas*,177OhioApp.3d625,2008-Ohio-3976,895N.E.2d 610,at¶40.

5.     Conclusion

Fortheforegoingreasons,defendantEnigmaSoftwar    eGroupUSA,LLCrespectfully requeststhattheCourt(1)grantEnigma'sMotionf    orSummaryJudgment;(2)enterjudgmentin favorofEnigmaandagainstplaintiffastoeachof    theclaimsintheComplaint;and(3)grantall otherreliefitdeemsjustandnecessary.

Respectfullysubmitted,

ENIGMASOFTWAREGROUPUSA,LLC,

Byitsattorneys,

s/MarkA.VanderLaan

MarkA.VanderLaan(OhioBarNumber0013297)
TrialAttorney
DINSMORE&SHOHLLLP
255EastFifthStreet,Suite1900
Cincinnati,OH45202
(513)977-8238
mark.vanderlaan@dinsmore.com

*Prohacvice:*
R.BruceAllensworth
      bruce.allensworth@klgates.com
AndrewC.Glass
      andrew.glass@klgates.com
RogerL.Smerage
      roger.smerage@klgates.com
K&LGATESLLP
StateStreetFinancialCenter
OneLincolnStreet
Boston,MA02111
Tel.:(617)261-3100
Fax:(617)261-3175

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been duly served upon All Counsel of Record by the Court's EM/ECF Electronic Mail system this 18th day of June, 2013.

s/Mark A. VanderLaan
Mark A. VanderLaan (Ohio Bar Number 0013297)

18