IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Nicole A. Sherrod,**

        **Plaintiff,**

  **v.**

**Enigma Software Group USA, LLC,**

        **Defendant.**

**Case No. 2:13-cv-36**

**Judge Graham**

**Magistrate Judge Kemp**

### OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment (doc. 11) filed on June 18, 2013. For the following reasons, the Court will GRANT IN PART AND DENY IN PART the Defendant's Motion for Summary Judgment (doc. 11).

**I.**    **Background**

The Defendant, Enigma Software Group, LLC, is a developer of PC security software. The Defendant produces a software security program, SpyHunter, which detects and removes viruses and malware from personal computers. Malaspina Aff. at ¶ 4, doc. 13. The Defendant also produces a software security program, RegHunter, which cleans personal computer registries. Id. at ¶ 5. A customer may purchase SpyHunter and RegHunter as a package. Id. at ¶ 6.

Upon purchase and installation of SpyHunter, together with or apart from RegHunter, a customer agrees to the terms of the SpyHunter End User License Agreement (SpyHunter EULA). Id. at ¶ 7. Before completing the purchase of SpyHunter, the Defendant's webpage notifies the customer that their subscription will automatically renew every six months. Id. at ¶ 8.

Further, the Defendant's webpage informs the customer that they will receive an e-mail notification that will allow them to cancel their subscription prior to the renewal date. Id.

In regards to cancelling a subscription, the EULA explains:

> When you purchase SpyHunter, your account will be configured for six month semi-annual automatic billing. If you choose to cancel the automatic billing option, you can accomplish this by either: (a) opening a ticket with technical support (on the following URL: http://www.enigmasoftware.com/support/) and request to opt-out of the automatic billing option, (b) contact our payment processor Esellerate.net at 1-800-999-273 . . . (c) or email Esellerate.net at shopper@esellerate.net. If you cancel automatic billing, we will not bill you for continued service when your account expires. If you desire continued service, it will be your responsibility to renew your account. If you remain on automatic billing, your account will automatically renew at the end of your subscription and your credit card will be billed accordingly.

EULA at 4, doc. 13. The EULA is governed by the laws of the State of New York. Id. at 7.

A third party, Digital River, Inc., provides customer billing, account renewal, and account cancellation services for the Defendant in conjunction with the sale of the Defendant's software products. Beidle Aff. at ¶ 3, doc. 12. Digital River is responsible for notifying customers of upcoming subscription renewals, processing customer payments for software purchases and renewal, and processing customer subscription cancellations. Id. Digital River makes and processes payments on behalf of the Defendant. Malaspina Aff. at ¶ 20. The Defendant does not directly charge customers credit cards. Id.

A. *The Plaintiff's Purchase of the Two Subscriptions*

On April 10, 2012, the Plaintiff purchased a SpyHunter and RegHunter subscription (the First Subscription) for her personal laptop. Sherrod Aff. at ¶ 5, doc. 35-1. The Plaintiff used a computer with an IP address ending in the digits 160. Malaspina Aff. at ¶ 9. The Plaintiff purchased the First Subscription with a Mastercard credit card ending in the digits 8617. Beidle

Aff. at ¶ 6. The First Subscription cost $69.98. Id. After installing the SpyHunter and RegHunter software on her personal laptop, the Plaintiff activated the software and ran a software scan on her computer. Malaspina Aff. at ¶ 11.

Shortly after purchasing the First Subscription, on April 15, 2012, the Plaintiff purchased a second SpyHunter and RegHunter subscription (the Second Subscription) for her husband's laptop.[1] Sherrod Aff. at ¶ 6. The IP address for the Plaintiff's husband's computer also ended in the digits 160. Malaspina Aff. at ¶ 13. The Plaintiff purchased the Second Subscription with a MasterCard credit card ending in the digits 5709. Beidle Aff. at ¶ 9. After installing the SpyHunter and RegHunter software on her husband's laptop, the Plaintiff activated the software and ran a software scan on the computer. Malaspina Aff. at ¶ 15.

The Plaintiff used her personal e-mail address, nicoleasherrod@yahoo.com, to complete both purchases. Sherrod Aff. at ¶¶ 5–6. After purchasing both subscriptions, the Plaintiff installed the software on her laptop and her husband's laptop. Id. at 7.

B.  *The Cancellation of the Plaintiff's Subscriptions*

The parties offer conflicting accounts regarding the Plaintiff's alleged cancellation of both subscriptions.

1.  The Plaintiff's Account

According to the Plaintiff, on October 8, 2012, she requested the cancellation of both subscriptions. Sherrod Aff. at ¶ 9. The Plaintiff did so using the Defendant's on-line cancellation process. Id. at ¶ 10. After completing the cancellation process, the website notified the Plaintiff

---

[1] As the Defendant correctly notes, the Plaintiff's Second Subscription was purchased on April 15, 2012, rather than April 17, 2012. Def.'s Reply at 2 n.1, doc. 36 (citing Sherrod Aff. at ¶ 6).

3

that she would receive an e-mail confirmation at nicoleasherrod@yahoo.com. Id. at ¶ 11. Although she did not immediately receive e-mail confirmation of her cancellation, screen messages indicated that the Plaintiff's subscriptions had been canceled. Id. The Plaintiff received an e-mail confirming her cancellation of both subscriptions on October 15, 2012. Id. at ¶ 12.

Two days after canceling both subscriptions, on October 10, 2012, the Plaintiff received a notice of renewal for one of the subscriptions. Sherrod Aff. at ¶ 13. In response, the Plaintiff sent the Defendant the following e-mail:

> On Monday, October 8, 2012 both subscriptions associated with my username: nicoleasherrod were cancelled. However, today I received an invoice for a renewal. I did not authorize a renewal and request an immediate credit for this renewal. I took all required steps to cancel both subscriptions and will dispute this charge if necessary.

Exhibit 1-g, doc. 35-2 at 26. That same day, the Plaintiff again e-mailed the Defendant to confirm cancellation of both subscriptions and "to revoke authorizations for charges" to her credit card. Sherrod Aff. at ¶ 14. The Defendant charged the Plaintiff's credit card for one of the subscriptions and that charge has not been refunded. Id. at 15.

### 2.    The Defendant's Account

On October 3, 2012, Digital River sent the Plaintiff an e-mail notifying her that the First Subscription would automatically renew on October 10, 2012. Beidle Aff. at ¶ 11. Digital River sent the e-mail to the account used by the Plaintiff in purchasing the First Subscription, nicoleasherrod@yahoo.com. Id. The e-mail included a link to contact Digital River Online Support and explained that, if the Plaintiff wished to cancel her subscription, she should click on that link. Id. at ¶ 13. After receiving the e-mail, the Plaintiff did not take any action prior to renewal of the First Subscription on October 10, 2012. Id. at ¶ 14. A week later, on October 10,

4

2012, Digital River renewed the Plaintiff's First Subscription and charged her MasterCard ending in the digits 6817 for $69.98. Id. at ¶ 15.

On October 8, 2012, Digital River sent the Plaintiff an e-mail notifying her that the Second Subscription would automatically renew on October 15, 2012. Id. at ¶ 16. Digital River sent the e-mail to the account used by the Plaintiff in purchasing the Second Subscription, nicoleasherrod@yahoo.com. Beidle Aff. at ¶ 16. The e-mail included a link to contact Digital River Online Support and explained that, if the Plaintiff wished to cancel her subscription, she should click on that link. Id. at ¶ 18. Upon receipt of the October 8 e-mail, the Plaintiff clicked the link therein to access Digital River's Online Support. Id. at ¶ 19. The Plaintiff then entered her e-mail address and the order number associated with her Second Subscription and clicked the "Cancel" link for the Second Subscription. Id. A week later, on October 15, 2012, Digital River processed the Plaintiff's cancellation of her Second Subscription and did not renew the Second Subscription. Id. After processing her cancellation, Digital River sent the Plaintiff an e-mail notifying her that her Subscription had been canceled. Id. at ¶ 20.

Several months later, on January 16, 2013, the Defendant contacted Digital River and requested that it cancel the automatic renewal of the Plaintiff's First Subscription prior to its next scheduled renewal. Beidle Aff. at ¶ 21. Digital River processed the Defendant's request and did not renew the Plaintiff's First Subscription on April 10, 2013. Id.

In early 2013, the Plaintiff filed a class-action Complaint (doc. 2) against the Defendant alleging: (1) breach of contract; (2) promissory estoppel; (3) fraud; and (4) misrepresentation. The Defendant subsequently filed a Motion for Summary Judgment (doc. 11). This matter is fully briefed and ripe for resolution.

**II.     Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see <u>Longaberger Co. v. Kolt</u>, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986); <u>Walton v. Ford Motor Co.</u>, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986); <u>see also</u> <u>Longaberger</u>, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." <u>Daugherty v. Sajar Plastics, Inc.</u>, 544 F.3d 696, 702 (6th Cir. 2008) (quoting <u>Anderson</u>, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." <u>Moore v. Philip Morris Cos., Inc.</u>, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. <u>Daugherty</u>, 544 F.3d at 702; <u>Adams v. Metiva</u>, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or

6

whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

**III. Discussion**

The Defendant moves for summary judgment on all counts of the Plaintiff's Complaint. According to the Defendant, its business records "unequivocally demonstrate that plaintiff purchased *two* software subscriptions from Enigma at *two* separate times for *two* different computers using *two* different credit cards, but only cancelled one of those subscriptions and allowed the other to renew under the terms of the applicable license agreement." Def.'s Mot. for Summ. J. at 1, doc. 11. The Defendant asserts that it complied with the EULA and that all of its representations to the Plaintiff were truthful.

In response, the Plaintiff maintains that material facts are in dispute. The Plaintiff argues that she followed the Defendant's on-line cancellation process and canceled both of her subscriptions prior to the automatic renewal, but that the Defendant only canceled one of her subscriptions and renewed the other subscription.

In reply, the Defendant emphasizes that the documentary evidence submitted by the Plaintiff does not create a material issue of genuine fact. In the Defendant's view, the only

evidence that could potentially create a genuine issue of material fact is the Plaintiff's affidavit in which she offers conclusory assertions that she canceled both subscriptions but that the Defendant nonetheless renewed one of the subscriptions and charged her for that renewal. The Defendant notes that while "'courts generally may not weigh evidence in resolving summary judgment motions, the quantity and quality of the evidence submitted to create an issue of material fact must be sufficient to support a jury verdict.'" Def.'s Reply at 8, doc. 36 (quoting Ridenour v. Collins, 692 F. Supp. 2d 827, 834 (S.D. Ohio 2010)). Consequently, the Defendant insists that "'some weighing of the evidence in order to determine the existence of material facts is unavoidable,'" Def.'s Reply at 8 (quoting Ridenour, 692 F. Supp. 2d at 834), and argues that the "Plaintiff's submissions . . . are not even colorable, let alone sufficient 'to show that there is more than some metaphysical doubt as to the material facts,'" Def.'s Reply at 9 (quoting Ridenour, 692 F. Supp. 2d at 834).

A.  *Breach of Contract*

Under New York law,[2] to recover damages for a breach of contract, a plaintiff must prove: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921 N.Y.S.2d 260, 264 (N.Y. App. Div. 2011) (citing JP Morgan Chase v. J.H. Electric of New York, Inc., 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010); Furia v. Furia, 498 N.Y.S.2d 12, 13 (N.Y. App. Div. 1986)). Here, the parties do not dispute the existence of the contract or that the Plaintiff performed pursuant to the terms of the EULA. Instead, the parties dispute whether the Defendant breached the terms of the EULA.

---

[2] Under the EULA's choice of law provision, New York law governs the Plaintiff's contract claims. EULA at 7.

In the Defendant's view, its business records and affidavits demonstrate conclusively that the Plaintiff canceled the Second Subscription but allowed the First Subscription to automatically renew. The Defendant maintains that Digital River charged the Plaintiff's credit card for the First Subscription pursuant to the renewal terms set forth in the EULA and canceled the Second Subscription in accordance with the Plaintiff's cancellation of that subscription.

In contrast, the Plaintiff insists that she canceled both subscriptions, but that the Defendant, through Digital River, nonetheless charged her for the renewal of the First Subscription. In support of this argument, the Plaintiff submits a sworn affidavit with attached documents that the affidavit describes as follows: "screen messages indicating that her subscriptions has been canceled," Exhibits 1-a, 1-b, 1-c, doc. 35-2; an October 10, 2012 e-mail to the Defendant notifying the Defendant of her cancellation of both subscriptions, Exhibit 1-g, doc. 35-2; e-mails confirming the cancellation of her subscriptions, Exhibits 1-d, 1-e, 1-f, doc. 35-2; and a credit card bill indicating that the Defendant charged her credit card for the renewal of the First Subscription, Exhibit 1-h, doc. 35-2.

In her affidavit, the Plaintiff states that, on October 8, 2012, she requested cancellation of both subscriptions through the Defendant's on-line cancellation process. Sherrod Aff. at ¶¶ 9–10. According to the Plaintiff, she "chose the online options available for cancelling each of the subscriptions associated with [her] user name (nicoleasherrod) and/or email address (nicoleasherrod)." Id. at ¶ 10 (citing Exhibits 1-a, 1-b, and 1-c). Upon completing the cancellation process, the website informed the Plaintiff that she would receive a cancellation e-confirmation at her personal e-mail account. Sherrod Aff. at ¶ 11. The Plaintiff viewed screen messages that showed both subscriptions had been canceled and she received an e-mail confirming her cancellation on October 15, 2012. Id. at ¶ 12 (citing Exhibits 1-a through 1-f).

9

Later in her affidavit, the Plaintiff reiterates that she "followed Enigma's [cancellation] process, but one of [her] subscriptions was not canceled as provided for in the EULA." Sherrod Aff. at ¶ 17. The Plaintiff states that she "followed the process reflected on Exhibit E, Beidle Declaration . . . and canceled all of my subscriptions using the process made available to me." Id. at ¶ 18. Further, the Plaintiff asserts that she "was not confused about [her] purchases, or [her] subscriptions, or [her] cancellations when [she] used the process required by Enigma to cancel them. [She] followed that process as directed." Id. at ¶ 24. Despite following the Defendant's cancellation policy when canceling both subscriptions, the Plaintiff's credit card was nonetheless charged for the renewal of the First Subscription. Id. at ¶¶ 15, 21, 25.

The Defendant argues that the documents attached to the affidavit do not show what the affidavit claims that they show. In fact, the Defendant contends that "there is no conflict between [the Plaintiff's] documentary evidence and Enigma's—both sets of evidence are entirely consistent with Enigma's recitation of the facts." Def.'s Reply at 1. The Defendant's Reply brief is devoted to argument that illustrates the factual deficiencies in the Plaintiff's documentary evidence. Def.'s Reply at 2–7.

Generally, the Court agrees with much of the Defendant's characterization of the Plaintiff's exhibits. Most, if not all, of the Plaintiff's exhibits are ambiguous or unsupportive of the Plaintiff's assertion that she canceled both subscriptions prior to October 8, 2012. For example, the screen messages submitted by the Plaintiff are undated and offer no indication of whether they were created before or after October 8, 2012. When viewed in the light most favorable to the Plaintiff, these documents indicate that the Plaintiff canceled both of her subscriptions at some undetermined time. But they do not support the conclusion that she canceled both subscriptions *prior to October 8, 2012*. The e-mails from the Defendant submitted

10

by the Plaintiff, Exhibits 1-d, 1-e, 1-f, doc. 35-2, suffer from similar flaws. Two of the e-mails concern the cancellation of the Second Subscription but not the First Subscription. See Exhibits 1-d and 1-e, doc. 35-2 (discussing the cancellation of subscription order number ST78823932, the order number associated with the Plaintiff's Second Subscription). The third e-mail provides the Plaintiff's order history for both subscriptions, but merely shows that they were both "fulfilled" and makes no reference to the cancellation of either subscription. See Exhibit 1-f, doc. 35-2.[3]

In contrast, the Defendant's documentary evidence is generally consistent with its account of the Plaintiff's failure to cancel the First Subscription. See Beidle Aff., Exhibits D, F, G, and H. However, the Plaintiff's documentary evidence does not definitively answer the ultimate question in this case: Did the Plaintiff actually cancel the First Subscription on October 8, 2012?

The parties have presented the Court with dueling affidavits that address this question. The Defendant points to the affidavit of Thomas Beidle, Digital River's Group Vice President for MyCommerce Operations, to support its position. In his affidavit, Beidle avers that, on October 3, 2012, the Plaintiff was informed that the First Subscription would renew on October 10, 2012 if she took no action. Beidle Aff. at ¶¶ 11–12. According to Beidle, "Sherrod took no action in connection with the October 3, 2012 notification. Further, Digital River's records do not reflect that Sherrod took any action to cancel her First Subscription prior to its renewal on October 10, 2012." Id. at ¶ 14.

In response, the Plaintiff cites her affidavit in which she swears that, on October 8, 2012, she canceled both subscriptions online using the cancellation process outlined by Beidle in his

---

[3] Significantly, even though these exhibits are generally unsupportive of the Plaintiff's factual assertions, neither do they disprove or contradict them.

11

affidavit. Despite canceling both subscriptions prior to their renewal, the Plaintiff maintains that the Defendant canceled the Second Subscription but renewed the First Subscription.

This is a close case. But, in the Court's view, the Plaintiff's affidavit is sufficient to create a genuine issue of material fact as to whether the Defendant breached the EULA. In her affidavit, the Plaintiff swears that she canceled both subscriptions following Digital River's cancellation process, but that the Defendant nonetheless renewed the First Subscription. Drawing all inferences and considering the evidence in the light most favorable to the Plaintiff, Beidle's affidavit and the Defendant's documentary evidence contradict, but do not conclusively disprove, the Plaintiff's sworn statements. A jury, and not the Court, must resolve this conflict.

According to the Defendant, the "Plaintiff's submissions in no way constitutes [sic] the 'significant probative evidence' necessary to sustain her claims." Def.'s Reply at 8. The Defendant argues that the Plaintiff's self-serving statements that she "followed the process" for cancellation as set forth in the SpyHunter EULA and as instructed on Digital River's website "are not even colorable, let alone sufficient 'to show that there is more than some metaphysical doubt as to the materials facts.'" Id. at 9 (quoting Ridenour, 692 F. Supp. 2d at 834). Further, the Defendant contends that the Plaintiff's statements in her affidavit are "utterly conclusory and not evidentiary in nature, such that the Court should properly disregard [them]." Def.'s Reply at 10 (citing F.R.C. Int'l, Inc. v. United States, 278 F.3d 641, 643–44 (6th Cir. 2002)).

The Defendant's arguments are unpersuasive. A party's affidavit alone may be sufficient to defeat summary judgment, Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 (6th Cir. 2010), and the Defendant does not explain why self-serving statements in the Plaintiff's affidavit are insufficient to support the denial of summary judgment here. "A court may not disregard evidence merely because it serves the interests of the party introducing it." Harris, 627 F.3d at

12

239 (citing Niemi v. NHK Spring Co., 543 F.3d 294, 300 (6th Cir. 2008)); Rushing v. Kan. City S. Ry. Co., 185 F.3d 496, 513 (5th Cir.1999) (reversed on other grounds)). See also Payne v. Pauley, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts."); Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.")

Nor does the Defendant explain why the Plaintiff's statements are "conclusory" and therefore not properly considered by the Court at this stage. It is true that an affidavit that contains no "specific facts" and merely "restat[es] the requirement of the law . . . cannot create a genuine issue of material fact sufficient to defeat summary judgment," Doren v. Battle Creek Health Sys., 187 F.3d 595, 598–99 (6th Cir. 1999). But in her affidavit, the Plaintiff swears that: (1) she purchased two software subscriptions from the Defendant; (2) her credit cards were charged for the purchase of both subscriptions; (3) prior to the subscriptions' renewal dates, she canceled both subscriptions online using the cancellation process outlined by Digital River's Vice President, Thomas Beidle; and (4) despite canceling both subscriptions, the Defendant renewed the First Subscription and charged her credit card. These specific facts are not conclusory and therefore support the denial of the Defendant's Motion for Summary Judgment on the Plaintiff's breach of contract claim.

B.     *Count Two - Promissory Estoppel*

In her Response in Opposition, "[the Plaintiff] concedes that her promissory estoppel claim is not viable given Enigma's admission that the EULA is a valid, binding and enforceable contract. She therefore consents to the entry of a judgment of dismissal on Count Two of her Complaint." Pl.'s Resp. in Opp. at 7 n.6. The Court will enter judgment dismissing Count Two of the Plaintiff's Complaint accordingly.

C.     *Counts Threes and Four – Fraud and Misrepresentation*

The Defendant argues that it is entitled to summary judgment on the Plaintiff's fraud and misrepresentation claims. First, the Defendant contends that the Plaintiff's fraud and misrepresentation claims are barred by the economic-loss rule. Second, the Defendant asserts that the Plaintiff cannot demonstrate that it made any false representations to the Plaintiff. Third, the Defendant argues that the Plaintiff cannot demonstrate any injury. The Plaintiff challenges each of these assertions in turn.

Here, even assuming that the Plaintiff's tort claims are not barred by the economic-loss rule, they fail as a matter of law. "[A] tort claim arising out of a breach of contract 'must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract.'" Wells Fargo Bank, N.A. v. Fifth Third Bank, 931 F. Supp. 2d 834, 839 (S.D. Ohio 2013) (quoting Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 684 N.E.2d 1261 (Ohio 1996)). Although the Plaintiff repeatedly refers to the $70.00 that she lost due to the Defendant's fraud (or negligent misrepresentation), that $70.00 is the same damages underlying her breach of contract claim. The Plaintiff does not identify any evidence of "actual damages attributable to the wrongful acts of the [Defendant] which are *in addition* to

those attributable to the breach of contract," <u>Textron Fin. Corp.</u>, 684 N.E.2d at 1271 (emphasis added). The Defendant is therefore entitled to summary judgment as to the Plaintiff's tort claims.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendant's Motion for Summary Judgment (doc. 11). The Plaintiff may proceed with its breach of contract claim against the Defendant. The Court ORDERS the Plaintiff to file a motion to certify the proposed class within 30 days of this Opinion and Order being issued. The Court also GRANTS the Defendant's Motion for Leave to File a Sur-Reply (doc. 43).

IT IS SO ORDERED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: September 29, 2014