IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Nicole A. Sherrod,** | |
| Plaintiff, | Case No. 2:13-cv-36 |
| v. | Judge Graham |
| **Enigma Software Group USA, LLC,** | Magistrate Judge Kemp |
| Defendant. | |

**OPINION AND ORDER**

Defendant Enigma Software Group USA, LLC ("Enigma") moves to strike the class allegations from Plaintiff Nicole Sherrod's complaint. (Def.'s Mot. to Strike Class Allegations, doc. 53). Enigma cites Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure and Rule 23.2 of this Court's Local Civil Rules as authority for the Court to strike this portion of the complaint. Enigma makes two substantive arguments in support of its motion: (1) Sherrod alleges an impermissible "fail-safe" class, and (2) the requirements for class actions under Rule 23 cannot be satisfied. For the reasons that follow, the Court will GRANT Enigma's Motion to Strike Class Allegations. (Doc. 53).

**I. Background**

Enigma sells licenses for various software products. Sherrod purchased two software licenses from Enigma. The licenses were not permanent, instead they automatically renewed every six months. Thus Enigma referred to them as software subscriptions. According to Enigma, Sherrod canceled one subscription, and the other automatically renewed. When it

1

automatically renewed, Enigma charged Sherrod $68.98. Sherrod objected to the charges, Enigma refused to issue a refund, and this lawsuit ensued.

Sherrod filed this putative class action alleging four claims. (Compl. at 5–7, doc. 2). The Court granted summary judgment to Enigma on all but one claim: breach-of-contract. (Op. & Order on Def.'s Mot. for Summ. J. at 15, doc. 50). The Court denied summary judgment on the breach-of-contract claim because the parties dispute a key fact: whether Sherrod timely requested cancellation of one of her software licenses. (*Id.* at 11–12).

For her breach-of-contract claim, Sherrod alleges that Enigma breached the cancellation policy outlined in the parties' contract. (Compl. at 5). The parties' contract is the End User License Agreement ("License Agreement" or "EULA"). (Malaspina Decl. Ex. A, doc. 13). Sherrod agreed to the License Agreement when she purchased the two software subscriptions, both of which automatically renewed six months after the initial purchase. (*Id.* at § 4). Sherrod purchased the "First Subscription" on April 10, 2012. (Sherrod Aff. at ¶ 5, doc. 35-1; Summ. J. Order at 2). Sherrod purchased the "Second Subscription" on April 15, 2012. (Sherrod Aff. at ¶ 6; Summ. J. Order at 3). Sherrod could cancel the subscriptions at any time. (Malaspina Decl. Ex. A at § 4). Sherrod successfully canceled the Second Subscription on October 8, 2012, before it automatically renewed. (Beidle Aff. at ¶ 19, doc. 12). Sherrod claims that she attempted to cancel the First Subscription before it automatically renewed, and Enigma did not honor the cancellation request. (Sherrod Aff. at ¶¶ 15, 21, 25). Engima presents records of relevant website activity, including sent and received e-mails as well as subscription cancellations, and asserts that it has no record of Sherrod canceling her First Subscription. (Beidle Aff. at ¶ 14, Exs. A, B, D, F, G, H). In January of the following year, Enigma requested that Sherrod's First Subscription be canceled before it automatically renewed again. Enigma's customer-billing-and-renewals

agent, Digital River, Inc., canceled the First Subscription on April 10, 2013. Thus the controversy in this case involves one automatic six-month renewal of the First Subscription.

Now, Enigma seeks to dismiss the class-action component of this lawsuit by moving to strike the class allegations from Sherrod's complaint. While some discovery on Sherrod's claim has taken place, no class discovery has yet occurred.

## II.  Motions to Strike Class Allegations

Motions to strike class allegations are a facial attack on a proposed class. This procedural posture is distinct from that of a motion to certify a class where the Court has at its disposal the facts generated by class discovery. In a previous case, this Court struck class allegations prior to discovery, but in that case the plaintiff was given leave to file revised class allegations. *See Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *9 n.3 (S.D. Ohio May 7, 2014). Nevertheless, under certain circumstances, the Court may strike class allegations before class discovery without granting leave to amend the class definition. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945, 949 (6th Cir. 2011) ("Given more time and more discovery, [the plaintiffs] say, they would have been able to poke holes in the court's class-certification analysis. We think not.").

In *Pilgrim* the Sixth Circuit held that it was not an abuse of discretion for the trial court to rule on class-certification in response to the defendant's motion to strike class allegations. *Id.* at 946. In response to the defendant's motion, the *Pilgrim* trial court, focusing on the predominance requirement of Rule 23, reasoned that class-action treatment was improper where "each class member's claim would be governed by the law of the State in which [the violation occurred.]" *Id*. The Sixth Circuit held that this type of facial analysis did not shirk the trial court's

responsibility to perform a "rigorous analysis," *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982), because the court could not envision "what type of factual development would alter the central defect in th[e] class action." *Id.* at 949. The Court may strike class allegations "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Loreto v. Procter & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013) (citing *Pilgrim*, 660 F.3d at 945). While a Court may decide that a case is not appropriate for class treatment prior to discovery, it may do so only when "no proffered or potential factual development offers any hope of altering that conclusion." *Pilgrim*, 660 F.3d at 949.

Before *Pilgrim*, courts disfavored striking class allegations prior to a motion to certify. *See, e.g.*, *Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) ("A motion to strike class allegations is not a substitute for class determination and should not be used in the same way."). After *Pilgrim*, courts still disfavor the practice. *See, e.g.*, *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("Without further insight into the facts, the Court lacks the foundation to conduct the 'rigorous analysis' required by Rule 23 and determine the appropriateness of class certification"). This reticence makes sense: typically a court lacks the necessary facts at the pleading stage to determine whether a class-action is proper. This is why striking class allegations before the class-discovery stage is disfavored, and courts generally defer the decision until after class discovery. *See Mazzola v. Roomster Corp.*, 849 F. Supp 2d. 395, 410 (S.D.N.Y. 2012) (motion to strike "disfavored" because it "preemptively terminate[s] the class aspects of . . . litigation.").

4

A motion to strike class allegations is a procedural vagabond. Defendants have filed similar motions under Rule 12(b)(6), *Schilling v. Kenton Cnty., Ky.*, No. CIV.A. 10-143-DLB, 2011 WL 293759, at *1 (E.D. Ky. Jan. 27, 2011); Rule 12(f), *World, L.L.C v. Atlas Choice Corp.*, No. 1:15 CV 24, 2015 WL 2381624, at *2 (N.D. Ohio May 19, 2015), *but see Cowit v. CitiMortgage, Inc.*, No. 1:12-CV-869, 2013 WL 940466, at *2 (S.D. Ohio Mar. 8, 2013) (motion to strike class allegations governed by Rule 23, not Rule 12); and Rule 23(d)(1)(D). *Sauter*, at *3. All have been filed with the purpose of accomplishing essentially the same thing: dismissing a plaintiff's class-wide claims.

The Court must perform a "rigorous" class-certification analysis to see whether the putative class is so hopelessly flawed that the Court should "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). The courts should defer this decision until after class discovery if "the existing record is inadequate for resolving the relevant issues." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996). But courts may strike class allegations without granting leave to amend if discovery would not have "alter[ed] the central defect in th[e] class claim." *Pilgrim*, 660 F.3d at 949. Which party bears the burden of proof here is unclear: while plaintiffs generally bear the burden of proving that the elements of class certifications exist, *Am. Med. Sys.*, 75 F.3d at 1079, it is the "moving party [that] has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Modern Holdings, LLC v. Corning Inc.*, Civ. No. 13-405-GFVT, 2015 WL 1481459 at *2 (E.D. Ky. March 31, 2015); *see also Schilling*, 2011 WL 293759 at *4.

**III. Discussion**

Pursuant to Federal Rule of Civil Procedure 23(d)(1)(D) and Local Rule 23.2, Enigma moves to strike Sherrod's class allegations, arguing (1) that Sherrod's proposed class is an impermissible fail-safe class and (2) that the individualized inquiry required to determine membership in the proposed class fails to satisfy the requirements of Rule 23. (Def.'s Mot. to Strike at 1–2).

**A. The proposed class is fail-safe and cannot be ascertained**

Nothing in Rule 23 expressly requires the Court to analyze ascertainability. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *Eager v. Credit Bureau Collection Servs., Inc.*, No. 1:13-CV-173, 2014 WL 3534949, at *3 (W.D. Mich. July 16, 2014) (citing *Stinson v. City of New York*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012)). Ascertainability is either an "implied requirement" of Rule 23, *see Eager*, 2014 WL 3534949, at *3, or an inherent requirement of Article III standing. *Modern Holdings*, 2015 WL 1481459, at *1 (quoting *Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849, at * 2 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011)). Other circuits have struggled to define the exact contours of the ascertainability doctrine, and consensus does not exist. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 662 (7th Cir. 2015) (rejecting the "more stringent version of ascertainability" adopted by the Third Circuit). While the exact contours of the ascertainability analysis remain unclear, it is clear that the Court must be able to "determine whether a particular individual is a member of the proposed class" before certifying it. *Young*, 693 F.3d at 537–38 (citations omitted). If the factual inquiry in the case would at the same time establish the defendant's liability and establish who is a member of the class, the class is an impermissible fail-safe class.

The Court finds that Sherrod's class definition describes a fail-safe class and is therefore impermissible. "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young*, 693 F.3d at 538 (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). A "fail-safe" class "includes only those who are entitled to relief." *Id.* "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman*, 646 F.3d at 352). In short, the Court must determine whether the proposed class is ascertainable.

Here Sherrod asks the Court to "certify a class comprised of all consumers who subscribed to Enigma's software products, canceled their subscription, and were charged for a renewal without giving Enigma prior authorization." (Compl. at 5). The only remaining claim this putative class can bring is for breach of contract. The contract here—the License Agreement—offers users three ways to cancel their software subscription: "(a) opening a ticket with technical support . . . and request to opt-out of the automatic billing option, (b) contact our payment processor Esellerate.net [by phone], (c) or email Esellerate.net . . . ." (Malaspina Decl. Ex. A at § 4).

Enigma argues that Sherrod's proposed class requires a fact-finder to determine liability—determine whether a customer had a software subscription wrongfully renewed—before the members of the class are ascertained. If the Court were to wait until a liability determination, a judgment for the defendant would allow potential class members to escape a binding judgment. This, Enigma argues, is a fail-safe class.

The Court agrees with Enigma that the proposed class definition is a fail-safe class. The definition incorporates the breach and damage elements of the contract claim—namely, that Enigma failed to perform its obligation under the License Agreement to honor cancellation requests and that consumers were charged for renewal. If an individual purchased a software subscription, timely canceled their subscription per the terms of the License Agreement, and was still charged for a renewal, they would have proved that Enigma was liable for breach of the License Agreement. Because the only way for Enigma to know who is a member of this class is to wait until liability is established, this is an impermissible fail-safe class.

Sherrod suggests two solutions to this problematic class definition: either bifurcating the class or amending the class definition.

First, Sherrod suggests bifurcating the class to try liability and damages separately. Bifurcation, Sherrod argues, allows the court to try separately the question of liability—whether Enigma's cancellation procedure is inadequate and deceptive—from the question of damages—whether a specific consumer consented to renewals. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Strike at 4, doc. 54). Courts often bifurcate class actions when "liability questions common to the class predominate over damages questions unique to class members." *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013).

Sherrod's arguments on bifurcation confuse the issues but clarify why this case is not appropriate for class treatment: the issue of whether Enigma's cancellation procedure was inadequate and deceptive is not before the Court. The only claim remaining is whether Enigma breached the License Agreement. The case is not about, as Sherrod repeatedly claims, Enigma's "failure to provide an adequate and transparent software subscription cancellation procedure." (Pl.'s Resp. in Opp'n to Mot. to Strike Class Allegations at 1, doc. 54). It is about whether

Sherrod canceled her software subscription before it automatically renewed. Therefore, bifurcating the class would not cure the fail-safe problem.

Sherrod argues that the Court should give leave to amend the complaint in the event the Court finds her definition to be fail-safe. Enigma argues that any attempt to amend the definition would be futile because the amended definition would be overbroad: it would include "every Enigma customer regardless of whether or not the customer had suffered injury at all." (Mem. in Support of Def.'s Mot. to Strike at 9, doc. 53-1). The Court shares Enigma's concern but recognizes that walking the tightrope of defining a class to not be overbroad and at the same time not fail-safe is more of an "art than a science." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The Court, however, cannot conceive of an amendment that would solve the fail-safe problem without creating other class-definition problems. Sherrod suggests revising her class definition in a number of different ways, but all present problems.

Sherrod suggests the "class definition may be revised to: (a) include all putative class members who are subject to the [License Agreement]'s cancellation procedure; (b) de-link damages from consumers' authorization to charge their credit cards; and, (c) establish that consumers incurred damages because the defendant's contractual cancellation procedure was inadequate and deceptive." (Pl.'s Resp. in Opp'n at 5).

Sherrod's first suggested revision, to "include all putative class members who are subject to the [License Agreement]'s cancellation procedure," cannot save the class. Sherrod already seeks to "certify a class comprised of all consumers who subscribed to Enigma's software products." (Compl. at ¶ 26). Consumers similar to Sherrod who subscribed to Enigma's software products are necessarily subject to the License Agreement's cancellation procedure. Sherrod's first suggested revision would not fix the fail-safe problem.

9

Sherrod's second and third suggested revisions are almost identical and equally futile. Sherrod suggests this solution: "[Damages] may be derived instead from the defendant's failure to provide an adequate subscription cancellation procedure. Damages then may be quantified by the amount the defendant charged consumers as a consequence of its inadequate and deceptive procedure." (Pl.'s Resp. at 4–5, doc. 54). But the Court already rejected Sherrod's claims regarding fraud and misrepresentation, the only claims under which arguments about the adequacy or deceptiveness of the cancellation procedure could be maintained. Ultimately, Sherrod argues about what an ideal cancellation procedure *should* be, not how Enigma breached the contractual procedures detailed in the License Agreement. (*Id.* at 5).

### B. The proposed class does not meet the Rule 23(a) requirements of commonality and typicality

Federal Rule of Civil Procedure 23 requires a number of prerequisites to be met before a representative may sue on behalf of a class. Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Courts commonly refer to these requirements as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Once a plaintiff satisfies the Rule 23(a) prerequisites, she must show that the putative class can be maintained under one of the three types of class actions described in Rule 23(b), which the Court discusses later.

Sherrod argues her putative class meets all four Rule 23(a) prerequisites and that her class could be maintained under any of the three types of classes listed in Rule 23(b)(1)-(3). (Compl. at ¶¶ 18–25). The parties do not dispute, for purposes of this motion, the numerosity or the

adequacy-of-representation prerequisites. (*Id.* at ¶¶ 18, 21; Mem. in Support of Def.'s Mot. to Strike at 7–9).

Enigma argues that Sherrod fails to meet the commonality and typicality requirements of Rule 23(a) and that her class cannot be maintained under Rule 23(b)(3). Specifically, Enigma argues that Sherrod's breach-of-contract claims should not be treated as a class action because such a class would require individualized fact-finding. Sherrod responds, generally, that this case is about Enigma's "inadequate and deceptive" cancellation procedure. (Pl.'s Resp. in Opp'n at 8). The Court disagrees: this case is not about Enigma's cancellation procedure; this case presents a factual dispute as to whether Nicole Sherrod timely canceled one software subscription with Enigma. The individualized fact-finding required to resolve Sherrod's dispute would not resolve factual issues for any other class members; instead, similar facts particular to each individual would have to be presented again and again, making this case not amenable to class treatment.

Under New York law[1], to recover damages for a breach of contract, a plaintiff must prove: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 921 N.Y.S.2d 260, 264 (N.Y. App. Div. 2011) (citing *JP Morgan Chase v. J.H. Electric of New York, Inc.*, 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010); *Furia v. Furia*, 498 N.Y.S.2d 12, 13 (N.Y. App. Div. 1986)).

For Sherrod's breach-of-contract claim, she alleges:

> 29. Plaintiff entered into a valid, binding agreement with Enigma according to which she purchased certain software.
> 30. Plaintiff at all times met her obligations under the agreement with Enigma.

---

[1] Under the License Agreement's choice-of-law provision, New York law governs the Plaintiff's contract claims. (Malaspina Decl. Ex. A § 13).

> 31. Enigma breached the agreement by first, failing to cancel Plaintiff's subscription upon request; and, second, charging Plaintiff's credit card a renewal fee without prior authorization and after Plaintiff canceled her subscription.
> 32. As a direct and proximate result of Enigma's acts and omissions, Plaintiff and all similarly situated consumers have been damaged.

(Compl. at ¶¶ 29–32).

By the face of the complaint, Sherrod's claim is appropriate for individual, not class treatment. The breach-of-contract elements at issue would be whether a class member timely canceled a subscription and whether Enigma honored that cancellation. These would need to be proved by the same types of evidence that Sherrod presents here: affidavits, email reports, and screenshots. The key question is this: is Sherrod telling the truth about her claimed cancellation? A common issue of fact or law does not exist unless "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Would litigation of Sherrod's claim provide "common *answers* apt to drive the resolution of the litigation?" *Id*. No. Litigating Sherrod's claim will require Sherrod to prove whether she timely canceled her First Subscription. The Court, armed with the answer to that question, will be no closer to the resolution of any putative class members' claims. Therefore, the Court concludes that additional discovery would not alter the defect here.

The Court will not address the parties' arguments on Rule 23(b), which describes three types of class actions. Having held that the class is not ascertainable and fails under Rule 23(a), there is no need to address the requirements of Rule 23(b).

### C. Jurisdiction

The Court retains jurisdiction over this case even after striking the class allegations, which supported the Court's subject-matter jurisdiction. *See Pilgrim*, 660 F.3d at 949 (district

court mistakenly dismissed for lack of jurisdiction after striking class allegations); *Metz v. Unizan Bank*, 649 F.3d 492, 500–01 (6th Cir. 2011) (retaining jurisdiction after denying class-certification motion).

**IV. Conclusion**

The Court, in granting summary judgment on three of Sherrod's four claims, narrowed this case to a single issue: whether Sherrod timely canceled her first software subscription. Now, Sherrod attempts to bootstrap her previously dismissed fraud and misrepresentation claims back into the case by arguing that her breach-of-contract claim depends upon discovering whether Enigma's cancellation procedure was deceptive. Upon review, no class discovery would alter the central defect in Sherrod's proposed class definition, and because Sherrod's proposed amendments would not cure the defect, granting leave to amend would be futile. The Court therefore GRANTS Enigma's Motion to Strike Class Allegations. (Doc. 53).

IT IS SO ORDERED.

    s/ James L. Graham  
    JAMES L. GRAHAM  
    United States District Judge

DATE: January 4, 2016